UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

HISCOX INSURANCE COMPANY, INC.,              :
                                             :
                              Plaintiff,     :
                                             :     REPORT AND
            -against-                        :     RECOMMENDATION
                                             :
HIGHLINE DEVELOPERS NY INC *et al.*,         :     24-CV-8533 (AMD)(MMH)
                                             :
                              Defendants.    :

------------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Hiscox Insurance Company Inc. ("Hiscox") filed this declaratory judgment action against Defendants Highline Developers NY Inc. ("Highline"), HSK Management Inc. ("HSK"), and Nominal Defendant Roud Cesar, pursuant to 28 U.S.C. §§ 2201 *et seq.*, asserting, *inter alia*, that Hiscox had no obligation to defend or indemnify HSK and Highline (or any other purported insured or additional insured) in Cesar's then-pending personal injury action in state court. (*See generally*, Compl., ECF No. 1.)[1]  Before the Court is Hiscox's motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b) and Local Civil Rule 55.2. (*See generally* Pl.'s Mot., ECF No. 29.)  The Honorable Ann M. Donnelly referred the motion for report and recommendation.  For the reasons set forth below, the Court respectfully recommends that the motion should be **granted in part and denied in part**.

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted.

## I.     BACKGROUND

### A.     Facts[2]

Hiscox is an Illinois insurance company with its principal place of business located in Chicago, Illinois.  (Compl., ECF No. 1 ¶ 9.)  HSK and Highline are New York corporations with their respective principal places of business in Brooklyn, New York.  (*Id*. ¶¶ 10, 12.) Non-party Joel Kahan is the CEO of HSK and Highline.  (*Id*. ¶¶ 11, 13.)  Cesar resides in Brooklyn.  (*See id*. ¶ 14.)

#### 1.     The Policy and Application

Hiscox issued a commercial general liability policy to HSK and Highline under policy number P101-854-022-1 for the period May 7, 2023 to May 7, 2024 (the "Policy").  (*Id*. ¶ 2; Cardullo Aff. Ex. B, ECF No. 29-6).  The Policy provides that Hiscox "will pay those sums that [Highline and HK] become[] legally obligated to pay as damages" because of "bodily injury" caused by an "occurrence" as defined under the Policy and "will have the right and duty to defend [Highline and HK] against any 'suit' seeking those damages," but "will have no duty to defend [Highline and HK] against any 'suit' seeking damages for 'bodily injury'" to which the Policy does not apply. (Cardullo Aff. Ex. B, ECF No. 29-6 at 8.)  The Policy also includes the condition "Representations": "By accepting this policy, you agree: a. The statements in the Declarations are accurate and complete; b. Those statements are based upon

---

[2] The facts are taken from the Complaint and documents incorporated by reference into the Complaint (including exhibits attached to the motion papers and documents of which the Court may take judicial notice), and are assumed to be true for the purposes of this motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

representations you made to us; and c. We have issued this policy in reliance upon your representations." (*Id.* at 19.)

HSK and Highline applied for the Policy sometime before May 7, 2023 (the "Application"). (Compl., ECF No. 1 ¶ 19.) Eli Shilian was listed as their point of contact on the Application. (*Id.* ¶ 27.) As part of the Application, Hiscox asked the following questions and HSK and Highline gave the following responses:

Q.      Class of business
A.      Project management

Q.      Does your business provide any of the of the following services? . . . [1] Construction Management or Advice. [2] General Contracting.
A.      None of the above.

Q.      Do you or you or your business supply, manufacture, distribute any tangible goods or products?
A.      No

Q.      As the individual completing this transaction, you are authorized to purchase and bind this insurance on behalf of the entity applying for coverage.
A.      Agree

Q.      Based upon your knowledge and the knowledge of your business's current and past partners, officers, directors and employees, during the last five years a third party has never made a claim against your business and you do not know of any reason why someone may make a claim.
A.      Agree

(Cardullo Aff. Ex. A, ECF No. 29-5 at 2–4.) Hiscox relied on these responses and other information provided in the Application to properly quote and bind the Policy. (Compl., ECF No. 1 ¶ 35.)

3

### 2.    The Underlying Action

On or about June 19, 2024, Cesar filed a verified complaint against HSK and several non-party defendants in state court  (the "Underlying Action").  (*See generally* Dowgin Aff. Ex. 1, ECF No. 29-9.)  Cesar claimed that, on or about January 20, 2024, he was walking on the sidewalk next to the property at 1811/1815 Nostrand Avenue, Brooklyn, New York (the "Property"), when he "was caused to slip and fall with great force and violence" on the sidewalk due to those defendants' negligence and suffered "severe painful and personal injuries." (*Id.* ¶¶ 63–64, 67.)  According to Cesar, on the date of his fall, HSK, "its servants, agents, and/or employees were performing construction work at or near" the Property.  (*Id.* ¶ 47.)

During its investigation of the Underlying Action, Hiscox learned that HSK and Highline submitted multiple false responses in the Application.  (Compl., ECF No. 1 ¶ 23.) *First*, at no time did HSK and Highline notify Hiscox that they performed general contracting services. (*Id.* ¶ 24.)  However, the New York City Department of Buildings ("DOB") Database shows that both HSK and Highline were issued general contractors licenses, which expired on March 19, 2024 and February 15, 2021, respectively.  (*Id.* ¶ 25.)  Further, Shilian, who was authorized to purchase and bind the Application on behalf of HSK and Highline, stated in an email on October 15, 2024 that HSK was hired as the "GC to construct the [P]roperty." (Cardullo Aff. Ex. A, ECF No. 29-5; *id.* Ex. C, ECF No. 29-7 at 3, 5.)  *Second*, Shilian later stated that he was "not involved" with Highline and had "nothing to do with" HSK or Highline, despite completing the Application on their behalf.  (Cardullo Aff. Ex. C, ECF No. 29-7 at 2–3.)  *Third*, although HSK and Highline stated in the Application that no claims had been filed

4

against them, approximately twelve lawsuits were filed against HSK and Highline within the past five years.  (Compl., ECF No. 1 ¶ 34.)

### B.    Procedural History

Hiscox initiated this declaratory judgment action on December 13, 2024, alleging, *inter alia*, that the Policy is void *ab initio* and should be rescinded due to HSK and Highline's material misrepresentations in the Application; and that Hiscox has no obligation to defend or indemnify HSK or Highline in the Underlying Action.  (*See generally* Compl., ECF No. 1.) Hiscox served the summons and Complaint on HSK and Highline in January 2025 and on Cesar in April 2025.  (Affs. of Service, ECF Nos. 10–11, 21.)  At Hiscox's request, after all Defendants failed to appear or otherwise respond to the Complaint, the Clerk of Court entered notations of default on March 11, 2025 and July 2, 2025.  (Entries of Default, ECF No. 16–17, 28.)[3]  On July 7, 2025, Hiscox moved for default judgment.  (Mot., ECF No. 29.)  The Honorable Ann M. Donnelly referred the motion for report and recommendation.  (July 8, 2025 Order Referring Mot.)[4]

While the motion for default judgment was pending, the parties in the Underlying Action agreed to discontinue that action on December 17, 2025, and filed a stipulation on March 3, 2026.  (*See Cesar v. HS Family 1815 NY LLC, et al.*, Index No. 516895/2024 (Kings Cnty. Sup. Ct.), Dkt. Entry 60.)  At a status conference on March 16, 2026, Hiscox confirmed that it is no longer pursuing: (1) a declaration that Hiscox is not required to provide a defense

---

[3] On April 4, 2025, the Court granted Plaintiff's unopposed application for exemption from compulsory arbitration pursuant to Local Civil Rule 83.7(e)(2). (Apr. 14, 2025 Order.)

[4] Plaintiff served the default judgment motion papers on Defendants at the incorrect mailing address, but later served them again via the New York Secretary of State.  (*See* ECF Nos. 29-13, 30.)

or indemnification to HSK and Highline in the Underlying Action; (2) the breach of contract claim (Second Cause of Action); and (3) any claims against Cesar. (*See* Mar. 16, 2026 Min. Entry; Pl.'s Ltr., ECF No. 31.) Hiscox requests only a declaratory judgment for rescission of the Policy. (*Id.*)

## II.     DISCUSSION

### A.     Standard for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process for a party to obtain a default judgment. Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Valerio v. K.A.M. Food Store, Inc.*, No. 19-CV-593 (MKB)(LB), 2019 WL 7764707, at *2 (E.D.N.Y. Dec. 26, 2019), *adopted by* 2020 WL 473614 (E.D.N.Y. Jan. 29, 2020). *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default. Fed. R. Civ. P. 55(a). If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment. Fed. R. Civ. P. 55(b)(1). *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021), *adopted by* 2022 WL 842666 (E.D.N.Y. Mar. 22, 2022). To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) (citing *Shah v. New York State Dep't of Civ. Serv.*,

168 F.3d 610, 615 (2d Cir. 1999)) (cleaned up), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (E.D.N.Y. Nov. 30, 2023).  The Court must draw all reasonable inferences in favor of the movant.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "a default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant."  *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (internal quotation marks omitted)).

### B.      Jurisdiction and Venue

#### 1.      Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action."  *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125–27 (2d Cir. 2011)).  "Because the Declaratory Judgment Act [("DJA")] does not itself confer subject matter jurisdiction on the Court, there must be an independent basis for federal jurisdiction."  *Am. Eur. Ins. Co. v. Tri State Plumbing & Heating Inc.*, No. 21-CV-725 (MKB)(PK), 2022 WL 4641628, at *3 (E.D.N.Y. Sept. 15, 2022), *adopted by* 2022 WL 4662266 (E.D.N.Y. Sept. 30, 2022) (citing *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006)).  The Court already determined that it has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332(a) because Plaintiff (an Illinois corporation) has diverse citizenship to HSK and Highline (New York corporations) and the amount in controversy (a $1 million insurance

policy) exceeds $75,000.   (*See* June 3, 2025 Order.)[5]   Plaintiff has thus established that jurisdiction exists.  *Union Mut. Fire Ins. Co. v. 142 Driggs LLC*, No. 23-CV-2629 (NGG)(LB), 2024 WL 302256, at *8 (E.D.N.Y. Jan. 26, 2024) (adopting R. & R.).

### 2.       Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s.]"  *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).   The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendants must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles.  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012)).

The Court has personal jurisdiction over HSK and Highline.  *First*, Hiscox properly served Highline and HSK by delivering copies of the summons and Complaint to the New York Secretary of State.  (*See* ECF Nos. 10 and 11.)  This method of service on corporations complies with federal and state procedural rules.  Fed. Rs. Civ. P. 4(h)(1)(A), (e)(1); N.Y. C.P.L.R. § 311-a(a); N.Y. Bus. Corp. Law § 306(b)(1).   *Second*, the Court has general jurisdiction over HSK and Highline, because they are "New York corporations 'doing business' in New York."  *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746,

---

[5] Hiscox withdrew any claims against Cesar.  (Pl.'s Ltr., ECF No. 31 at 1.)

760 (2014) and N.Y. C.P.L.R. § 301), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). *Third*, "[s]ince jurisdiction is proper for HSK and Highline under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis*, 2018 WL 4292171, at *3. Each defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

### 3. Venue

"A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). Venue is proper in this district because (1) HSK and Highline have their principal places of business within this district; and (2) the Policy was issued and delivered within this district. (Compl., ECF No. 1 ¶ 18.)

### C. Default Judgment Factors

"Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment." *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a

result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Hiscox's favor. *First*, Defendants' "non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct." *Tambriz v. Taste & Sabor*, *LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021). *Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021). *Third*, Hiscox will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (citation omitted), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).

Based on the foregoing, entry of default judgment is permissible against HSK and Highline.

### D. Liability

#### 1. Right to Declaratory Relief

The DJA provides that, "in a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[District courts retain 'broad discretion' to decline jurisdiction under the DJA[.]" *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023) (quoting *Niagara*

10

*Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 106 n.7 (2d Cir. 2012)).   In determining whether to grant declaratory judgment, courts consider the following non-exhaustive factors:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Admiral Ins. Co.*, 57 F.4th at 99–100 (cleaned up.)   "Declaratory judgment . . . will only be granted where the Court has sufficient proof on which to base its determination." *Falls Lake Nat'l Ins. Co. v. DNA Plumbing Contractors, Inc.*, No. 20-CV-2798 (RJD)(RER), 2021 WL 3518279, at *5 (E.D.N.Y. May 4, 2021) (collecting cases), *adopted by* 2021 WL 2702571 (E.D.N.Y. July 1, 2021).

Hiscox demonstrates that declaratory relief may be warranted for its claim for rescission.   "The existence of a justiciable controversy does not depend on the pendency of a live claim against the insured. [An insurer's] claim to rescind its policies is by itself a justiciable controversy." *Falls Lake Nat'l Ins. Co. v. Nexus Builders Corp.*, No. 21-CV-1403 (RA), 2022 WL 992714, at *3 (S.D.N.Y. Mar. 31, 2022) (quoting *Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan*, 77 F.3d 48, 51 (2d Cir. 1996)).   Although the Underlying Action has been discontinued, there is still a live controversy in Hiscox's request to rescind the Policy. Given the multiple lawsuits filed against HSK and Highline in recent years, the possibility of future litigation relating to the Policy is not speculative.   Importantly, a declaratory judgment rescinding the Policy will afford Hiscox specific relief from uncertainty and clarify potential

11

legal issues or obligations that may arise, including Hiscox's duty to defend or indemnify HSK and/or Highline in future claims arising out of the Policy.

Additionally, none of the remaining *Admiral Ins. Co.* factors militate against entering a declaratory judgment. *See Admiral Ins. Co.*, 57 F.4th at 99–100. There is no indication that Hiscox proposed a declaratory judgment for "procedural fencing" or "a race to res judicata." Further, a judgment in this Court will not improperly interfere with the now-discontinued Underlying Action and any concerns for judicial efficiency and judicial economy are moot. Further, there is not a "better or more effective" remedy to protect Hiscox's interests. Accordingly, the Court respectfully recommends that Hiscox is eligible for declaratory relief on its rescission claim.

### 2. Rescission

Hiscox seeks a declaratory judgment that the Policy is rescinded and void *ab initio* based on HSK and Highline's material misrepresentations in the Application. (*See* Pl.'s Mem., ECF No. 29-1 at 9–12; Pl.'s Ltr., ECF No. 31.)

"Under New York law, an insurance policy is considered void *ab initio* if the policy was issued in reliance on material misrepresentations." *Main St. Am. Assurance Co. v. Maven Bus. Sols. Grp. Inc.*, No. 21-CV-6327 (AMD)(RML), 2022 WL 18144030, at *3 (E.D.N.Y. Dec. 5, 2022) (citing *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 822 F.3d 620, 649 (2d Cir. 2016)), *adopted by* 2023 WL 121734 (E.D.N.Y. Jan. 5, 2023). "New York Insurance Law defines a 'misrepresentation' as a false statement 'as to a past or present fact, made to the insurer by . . . the applicant for insurance . . . at or before the making of the insurance contract as an inducement to the making thereof.'" *Union Mut. Fire Ins. Co.*, 2024 WL 302256, at *5 (quoting N.Y. Ins. Law § 3105(a)). For a misrepresentation to void an insurance policy, the

alleged misrepresentation must be "material," meaning that "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." N.Y. Ins. Law § 3105(b)(1). To demonstrate materiality, an insurer must present documentation, such as underwriting materials, "to establish that it would not have issued the same policy if the correct information had been disclosed in the application." *Union Mut. Fire Ins. Co.*, 2024 WL 302256, at *5 (citing *Scottsdale Ins. Co. v. Access Sols. Grp. LLC*, No. 17-CV-6793 (ENV)(PK), 2020 WL 9814090, at *3 (E.D.N.Y. Jan. 16, 2020) and *Cont'l Cas. Co. v. Marshall Granger & Co.*, LLP, 6 F. Supp. 3d 380, 390 (S.D.N.Y. 2014), *aff'd sub nom. Cont'l Cas. Co. v. Boughton*, 695 F. App'x 596 (2d Cir. 2017)). "Once a policy is considered void *ab initio*, 'all obligations under [the] rescinded policy are . . . extinguished.'" *Union Mut. Fire Ins. Co.*, 2024 WL 302256, at *7 (quoting *Scottsdale Ins. Co. v. Priscilla Props., LLC*, 254 F. Supp. 3d 476, 480–81 (E.D.N.Y. 2017)).

During its investigation of the Underlying Action, Hiscox learned that HSK and Highline made at least three material misrepresentations in the Application they submitted through the online underwriting platform system. *First*, HSK and Highline represented that their business purportedly was engaged in "[p]roject management" and that they did not provide "Construction Management or Advice" or "General Contracting" services or "perform any design, construction, installation, removal, or physical repair of any property or tangible good[.]" (Compl., ECF No. 1 ¶¶ 20, 22; Cardullo Aff. ECF No. 29-2 ¶¶ 16, 20; *id.* Ex. A, ECF No. 29-5 at 2–4.) HSK and Highline never informed Hiscox that they performed general contracting services. (Compl., ECF No. 1 ¶ 24.) However, Hiscox learned in its investigation that the DOB issued HSK and Highline general contractors licenses, which expired on March 19, 2024 (during the pendency of the Underlying Action) and February 15, 2021, respectively.

13

(Compl., ECF No. 1 ¶ 25; Dowgin Aff. Ex. 2, ECF No. 29-10.)  Additionally, Shilian, the Application's point of contact on behalf of HSK and Highline, informed Hiscox in October 2024 that HSK was hired as the "GC to construct the [P]roperty" where Cesar alleged he was injured.  (Cardullo Aff. Ex. A, ECF No. 29-5; *id.* Ex. C, ECF No. 29-7 at 3, 5.)  *Second*, Shilian later disclaimed any connection to HSK or Highline, stating that he was "not involved" with Highline and had "nothing to do with" HSK or Highline, despite completing the Application on their behalf.  (Cardullo Aff. Ex. C, ECF No. 29-7 at 2–3.)  *Finally*, HSK and Highline represented to Hiscox that no third party had sued them in the five years before they submitted the Application.  (Compl., ECF No. 1 at ¶ 32; Cardullo Aff. ECF No. 29-2 ¶ 22; *id.* Ex. A, ECF No. 29-5 at 4.)  Hiscox subsequently learned that HSK and Highline were defendants in approximately twelve lawsuits that they did not disclose on the Application.  (Compl., ECF No. 1 ¶ 34; Dowgin Aff. Ex. 1, ECF No. 29-9.)  Hiscox argues that these misrepresentations are material because Hiscox would not have issued the Policy if it had been aware that HSK and Highline were performing general contracting or other construction services or that a person who had "nothing to do with" HSK and Highline submitted the Application on their behalf.  (*Id.* ¶¶ 26, 31.)  In other words, Hiscox would not have issued the Policy if HSK and Highline had been truthful on the Application.  (*Id.* ¶ 39.)

To support their materiality argument, Hiscox submits the affidavit of Justin Cardullo, its General Liability Practice leader, which includes excerpts from Hiscox's online underwriting platform ("the Program") that "instantly binds coverage for certain businesses that fall within Hiscox's risk appetite."  (Cardullo Aff., ECF No. 29-2 ¶ 8.)  According to Cardullo, the Program has a series of questions to screen out the risks that Hiscox will not insure under the Program for certain businesses.  (*Id.* ¶ 9.)  For example, the platform asks

14

profession-specific questions with pre-set categories to determine whether the business meets the Program's underwriting criteria; if the applicant's business is not within one of the pre-set categories, then the platform will not allow the application to proceed and will display a message alerting the applicant that Hiscox cannot issue a policy quote for them.  (*Id.* ¶¶ 11–14.)  Cardullo avers that HSK and Highline provided responses in the Application consistent with the misrepresentations stated above, and their untruthful responses were sufficient for the Program to issue a binding policy to them.  (*See* Cardullo Aff. ECF No. 29-2 ¶¶ 17, 19, 21.)  Cardullo further asserts that Hiscox would not have issued the Policy if HSK and Highline been truthful in their responses to the questions, and the Program would "not have permitted the Application to move forward in the system because such a business fell outside the scope of Hiscox's risk appetite."  (*Id.* ¶ 27.)

The Court finds that the Cardullo Affidavit—which includes excerpts from the underwriting platform and Program—combined with Hiscox's allegations are sufficient to establish that HSK and Highline made material misrepresentations in the Application, and that Hiscox in turn relied on these misrepresentations in issuing the Policy.  Therefore, Hiscox has met its burden for rescinding the Policy.  *Falls Lake Nat'l Ins. Co. v. Nexus Builders Corp.*, No. 21-CV-1403 (RA), 2024 WL 708194, at *4–5 (S.D.N.Y. Feb. 21, 2024) (declaring insurance policy void *ab initio* because the insurer "issued [it] in reliance on material misrepresentations") (quoting *Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 139 (2d Cir. 2008)); *see also PHL Variable Ins. Co. v. Bimbo*, No. 17-CV-1290 (FB) (ST), 2018 WL 4691222, at *3 (E.D.N.Y. Aug. 30, 2018) (finding that plaintiff had "adequately shown that the policy was void *ab initio*" based on misrepresentations in the application for the insurance policy).  Accordingly, "[g]iven the totality of the material

misrepresentations that were justifiably relied upon by the plaintiff in issuing the [Policy]," the Court respectfully recommends that a declaratory judgment rescinding the Policy and declaring the Policy void *ab initio* is appropriate. *Diamond State Ins. Co. v. Hidalgo*, No. 20-CV-1340 (ENV)(CLP), 2021 WL 7906545, at *5 (E.D.N.Y. July 23, 2021), *adopted by* Order Adopting R. & R., *Diamond State Ins. Co. v. Hidalgo*, No. 20-CV-1340 (ENV)(CLP) (E.D.N.Y. Oct. 20, 2021).

## III.    **CONCLUSION**

For the foregoing reasons, the Court respectfully recommends that Hiscox's motion for default judgment at ECF No. 29 should be **granted** in that the Court should declare that the Policy is rescinded and void *ab initio*. All other requests for relief should be **denied** as moot.

A copy of this Report and Recommendation is being served on Plaintiff via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation at the following addresses forthwith: (1) HSK Management Inc., 3832 Kings Highway Brooklyn, New York 11234; (2) Highline Developers NY Inc., 3832 Kings Highway Brooklyn, New York 11234; and (3) Roud Cesar, 133-50 125th Street, Apt. 1, South Ozone Park, New York 11420.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).[6] Any requests for an extension of time to file objections shall be directed to Judge Donnelly. If a

---

[6] Any party may file a letter before the conclusion of the 14-day period stating that they do not object to this Report and Recommendation.

16

party fails to object timely to this Report and Recommendation, it waives any right to further

judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir.

2022).

**SO ORDERED.**

Brooklyn, New York
March 17, 2026

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge